# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

ARCELORMITTAL FRANCE and ARCELORMITTAL ATLANTIQUE ET
LORRAINE,

Plaintiffs-Appellants,

v.

AK STEEL CORPORATION, SEVERSTAL DEARBORN, INC. and
WHEELING-NISSHIN INC.,

Defendants-Appellees.

---

2014-1189

---

Appeal from the United States District Court for the District of Delaware
in Case No. 1:10-cv-0050-SLR, Judge Sue L. Robinson.

--------------------------------------------------------------

ARCELORMITTAL FRANCE, ARCELORMITTAL ATLANTIQUE ET
LORRAINE, and ARCELORMITTAL USA LLC,

Plaintiffs-Appellants,

v.

AK STEEL CORPORATION,

Defendant-Appellee.

---

2014-1190

---

Appeal from the United States District Court for the District of Delaware
in Case No. 1:13-cv-00685-SLR, Judge Sue L. Robinson.

-------------------------------------------------------------

ARCELORMITTAL FRANCE, ARCELORMITTAL ATLANTIQUE ET LORRAINE, and ARCELORMITTAL USA LLC,

Plaintiffs-Appellants,

v.

SEVERSTAL DEARBORN, INC. and WHEELING-NISSHIN INC.,

Defendants-Appellees.

————————————————

2014-1191

————————————————

Appeal from the United States District Court for the District of Delaware in Case No. 1:13-cv-00686-SLR, Judge Sue L. Robinson.

————————————————————————————

**BRIEF OF APPELLEE AK STEEL CORPORATION**

————————————————————————

Christopher N. Sipes
Roderick R. McKelvie
Jeffrey H. Lerner
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 662-6000

*Attorneys for Defendant-Appellee*
*AK Steel Corporation*

## CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee AK Steel Corporation certifies the following information in compliance with Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rules 26.1 and 47.4:

1. The full name of every party or amicus represented by us is:

    AK Steel Corporation

2. The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by us are:

    AK Steel Corporation

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus curiae represented by us are:

    AK Steel Corporation is a wholly owned subsidiary of AK Steel Holding Corporation, a publicly traded company (New York Stock Exchange symbol AKS).

4. The names of all law firms and the partners or associates that appeared for the party or amicus represented by us in the trial court or agency or are expected to appear in this Court are:

    Roderick R. McKelvie
    Christopher N. Sipes
    Jeffrey H. Lerner
    Maureen M. Japha
    Sarah J. Smith
    COVINGTON & BURLING LLP
    1201 Pennsylvania Avenue, N.W.
    Washington, DC 20004

    Adam W. Poff
    Monté T. Squire
    YOUNG CONAWAY STARGATT & TAYLOR, LLP
    Rodney Square
    1000 North King Street
    Wilmington, DE 19801

Dated:      June 16, 2014          /s/ Christopher N. Sipes
                                   Christopher N. Sipes

# <u>TABLE OF CONTENTS</u>

Page

CERTIFICATE OF INTEREST..................................................................i

TABLE OF CONTENTS........................................................................iii

TABLE OF AUTHORITIES....................................................................v

STATEMENT OF RELATED CASES ....................................................1

COUNTERSTATEMENT OF THE ISSUES.........................................2

STATEMENT OF THE CASE..................................................................4

    A.     Preliminary Statement ...........................................................4

    B.     Statement of Facts ...............................................................10

          1.     The Trial and First Appeal.........................................10

          2.     The Reissued Patent ...................................................12

          3.     The Remand.................................................................15

          4.     The 685 and 686 Actions ..........................................18

SUMMARY OF THE ARGUMENT ......................................................19

ARGUMENT ...........................................................................................27

I.     STANDARD OF REVIEW...........................................................27

II.    THE DISTRICT COURT CORRECTLY HELD THAT THE
       REISSUE PATENT WAS BROADENED IN VIOLATION OF 35
       U.S.C. § 251 ................................................................................27

    A.     This Court's Construction Of The Original '805 Patent Is
          Binding Law As To The Meaning Of That Patent And Is Not
          Vitiated By The PTO's Grant Of A Broadened Reissue Patent. ............29

          1.     This Court's Construction of the '805 Patent Is Law of
               the Case and Entitled to Stare Decisis..............................31

2.   This Court's Construction of the '805 Patent Was Not Subject To Alteration by a Patent Examiner. ...................................32

B.   The Grant Of A Reissue Patent Is Not "New Evidence" That Could Undermine This Court's Construction Of The '805 Patent. ...................................................................................................34

1.   The Prosecution of a Reissue Application Provides No Evidence as to the Meaning and Scope of the Original Patent's Claims. ...................................................................35

2.   ArcelorMittal Is Wrong that the Reissue Patent Is "New Evidence" and This Alone Defeats Its Argument. .........................40

III.   THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION TO HOLD THE RE153 PATENT INVALID IN ITS ENTIRETY DUE TO ARCELORMITTAL'S PURPOSEFUL BROADENING INTENDED TO CIRCUMVENT THE COURT'S RULINGS ...................................................................................41

A.   A Reissue Patent Broadened In Violation Of Section 251 May Be Invalidated In Its Entirety. ......................................................42

B.   Precedent Further Shows That A Patent Improperly Broadened Following Unreasonable Delay May Be Invalidated. ..................................48

C.   This Reading Is Supported By Considerations Of Equity And Policy ...........................................................................................50

IV.   THE DISTRICT COURT CORRECTLY CONCLUDED THAT AK STEEL'S ACCUSED PRODUCT IS NON-INFRINGING ...................53

V.   FURTHER PROCEEDINGS REGARDING COMMERCIAL SUCCESS ARE NOT NECESSARY BECAUSE THE RECORD IS DEVOID OF RELEVANT EVIDENCE ...............................................56

CONCLUSION ..............................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFG Industries, Inc. v. Cardinal IG Co.,*
  375 F.3d 1367 (Fed. Cir. 2004) ..................................................................31

*Anderson v. International Engineering & Manufacturing, Inc.*
  160 F.3d 1345 (Fed. Cir. 1998) ..................................................................36

*ArcelorMittal France v. AK Steel Corp.,*
  700 F.3d 1314 (Fed. Cir. 2012) .............................................................*passim*

*ArcelorMittal France v. AK Steel Corp.,*
  755 F. Supp. 2d 542 (D. Del. 2010) ...........................................................10

*Aristocrat Technologies Australia PTY Ltd. v. Int'l Game Tech.,*
  543 F.3d 657 (Fed. Cir. 2008) ...................................................................44

*In Re Baxter,*
  678 F.3d 1357 (Fed. Cir. 2012) .................................................................33

*Beckman Instruments, Inc. v. Coleman Instruments, Inc.,*
  338 F.2d 573 (7th Cir. 1964) ....................................................................46

*Brady Const. Innovations, Inc. v. Perfect Wall, Inc.,*
  290 F. App'x 358 (Fed. Cir. 2008) (unpublished) ..........................21, 31, 37

*Deckers Corp. v. United States,*
  --- F.3d ---, No. 2013-1356 (Fed. Cir. May 13, 2014) ...............................32

*E.E.O.C. v. Westinghouse Elec. Corp.,*
  925 F.2d 619 (3d Cir. 1991) .....................................................................55

*E-Pass Techs., Inc. v. 3Com Corp.,*
  473 F.3d 1213 (Fed. Cir. 2007) ....................................................20, 31, 32

*Enzo Biochem, Inc. v. Calgene, Inc.,*
  188 F.3d 1362 (Fed. Cir. 1999) .............................................................27, 55

*Eolas Technologies Inc. v. Microsoft Corp.,*
  No. 99-C-626, 2007 WL 7597509 (N.D. Ill. July 17, 2007) .......................38

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*,
    149 F.3d 1309 (Fed. Cir. 1998) ................................................................31

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013) ....................................................... 33, 34

*Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*,
    383 F.3d 1352 (Fed. Cir. 2004) ...........................................................46

*General Radio Co. v. Allen B. Du Mont Laboratories, Inc.*,
    129 F.2d 608 (3d Cir. 1942) ........................................................ 49, 50

*Golden Bridge Tech., Inc. v. Apple Inc.*,
    937 F. Supp. 2d 490 (D. Del. 2013) ...................................................38

*H.W. Roos Co. v. McMillan*,
    64 F.2d 568 (6th Cir. 1933) ................................................................50

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
    882 F.2d 1556 (Fed. Cir. 1989) ...................................................*passim*

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    645 F.3d 1336 (Fed. Cir. 2011) ..........................................................31

*Interconnect Planning Corp. v. Feil*,
    774 F.2d 1132 (Fed. Cir. 1985) ..........................................................48

*Key Pharm. v. Hercon Labs. Corp.*,
    161 F.3d 709 (Fed. Cir. 1998) ............................................................30

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
    744 F.3d 1272 (Fed. Cir. 2014) (en banc) ................................. 31, 32, 38, 39

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ................................................................ 39, 51

*MBO Laboratories, Inc. v. Becton, Dickinson & Co.*,
    602 F.3d 1306 (Fed. Cir. 2010) ...........................................................47

*McClain v. Ortmayer*,
    141 U.S. 419 (1891) ...........................................................................39

*McCullen v. Coakley*,
    708 F.3d 1 (1st Cir. 2013) ............................................................ 40, 41

*Metro. Stevedore Co. v. Rambo,*
515 U.S. 291 (1995) ................................................................................43

*Miller v. Brass Co.,*
104 U.S. 350 (1881) .........................................................................*passim*

*Minkin v. Gibbons, P.C.,*
680 F.3d 1341 (Fed. Cir. 2012) ..............................................................27

*Moore v. Bennette,*
517 F.3d 717 (4th Cir. 2008) ..................................................................40

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.,*
415 F.3d 1335 (Fed. Cir. 2005) ..............................................................27

*Pannu v. Iolab Corp.,*
155 F.3d 1344 (Fed. Cir. 1998) ..............................................................46

*Pauley v. BethEnergy Mines, Inc.,*
501 U.S. 680 (1991) ................................................................................50

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..............................................31

*Quantum Corp. v. Rodime, PLC,*
65 F.3d 1577 (Fed. Cir. 1995) ................................................ 18, 25, 41, 52

*Sontag Chain Stores Co. Ltd. v. National Nut Co.,*
310 U.S. 281 (1940) ................................................................................49

*In re Staats,*
671 F.3d 1350 (Fed. Cir. 2012) ..............................................................49

*Tech. Licensing Corp. v. Videotek, Inc.,*
545 F.3d 1316 (Fed. Cir. 2008) ..............................................................33

*Tillotson, Ltd. v. Walbro Corp.,*
831 F.2d 1033 (Fed. Cir. 1987) .........................................................*passim*

*Toro Co. v. White Consolidated Industries, Inc.,*
383 F.3d 1326 (Fed. Cir. 2004) ..............................................................40

*Total Containment, Inc. v. Environ Products, Inc.,*
106 F.3d 427, 1997 WL 16032 (Fed. Cir. 1997) (unpublished) ......... 21, 37

*Total Containment, Inc. v. Environ Products, Inc.*,
  921 F. Supp. 1355 (E.D. Pa. 1995), *aff'd*, 106 F.3d 427 (Fed. Cir.
  1997) (unpublished) ............................................................................................37

*Unites States v. Webb*,
  98 F.3d 585 (10th Cir. 1996) ...........................................................................40

*Vectra Fitness, Inc. v. TNWK Corp.*,
  162 F.3d 1379 (Fed. Cir. 1998) ...........................................................8, 21, 39

*In re Youman*,
  679 F.3d 1335 (Fed. Cir. 2012) ................................................................*passim*

**Statutes**

35 U.S.C. § 102(a) ...............................................................................................48

35 U.S.C. § 102(f) .................................................................................................5

35 U.S.C. § 103(a) ...............................................................................................48

35 U.S.C. § 112 ..............................................................................................43, 48

35 U.S.C. § 185 ....................................................................................................46

35 U.S.C. § 251 ..............................................................................................*passim*

35 U.S.C. § 253 ..........................................................................................24, 44, 45

35 U.S.C. § 282 .......................................................... 10, 21, 23, 41, 43, 44, 45

35 U.S.C. § 288 ....................................................................................................45

35 U.S.C. § 305 ....................................................................................................45

# STATEMENT OF RELATED CASES

Defendant-Appellee AK Steel Corporation generally agrees with ArcelorMittal's statement of related cases. An earlier appeal from the United States District Court for the District of Delaware, in case no. 10-cv-0050-SLR, was before this Court, *ArcelorMittal France and ArcelorMittal Atlantique et Lorraine v. AK Steel Corporation, and Severstal Dearborn, Inc. and Wheeling-Nisshin Inc.*, No. 2011-1638. That appeal was heard by a panel composed of Circuit Judges Dyk, Clevenger, and Wallach, and decided on November 30, 2012. The opinion is published as *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Fed. Cir. 2012). Counsel for AK Steel is not aware of any other cases pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## COUNTERSTATEMENT OF THE ISSUES

1.  Whether the district court correctly held that Reissue Patent No. RE44,153 (the "RE153 patent") enlarged the scope of the claims of the original patent, U.S. Patent No. 6,296,805 (the "'805 patent"), in violation of 35 U.S.C. § 251, where ArcelorMittal sought and obtained claims in the reissue patent that reach subject matter outside the claims of the '805 patent as construed by this Court in *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314 (Fed. Cir. 2012)?

2.  Whether the district court correctly recognized that a reissue patent intentionally broadened in violation of 35 U.S.C. § 251 may be held invalid, particularly where, as here, the patentholder deliberately broadened claims in a reissue application filed months after an adverse jury verdict on the original patent and nearly a decade after the original patent was issued, in an attempt to ensnare product this Court confirmed in a prior appeal was noninfringing of the original patent?

3.  Whether summary judgment of noninfringement of RE153 should be affirmed where the undisputed trial evidence demonstrated AK Steel's accused product had an ultimate tensile strength below 1500 MPa, where ArcelorMittal's counsel conceded below there was no proof of any infringing product (A742 at 36:6-14), and where the district court found "ArcelorMittal concede[d] (by not addressing)

the fact that the trial record has no evidence of past infringement of claim 1 of the

'805 patent as construed by the Federal Circuit" (A14-15)?

# STATEMENT OF THE CASE

AK Steel disagrees with Plaintiffs-Appellants' ("ArcelorMittal") statement of the case.

## A.    Preliminary Statement

This case began with ArcelorMittal's assertion that Defendants-Appellees infringed U.S. Patent No. 6,296,805 (the "'805 patent"). Following full litigation, including a five-day trial in January 2011, a jury issued a verdict that Defendants did not infringe and that the asserted claims were invalid based on prior art as anticipated and obvious. (A1503-09.)

ArcelorMittal appealed. On appeal, this Court affirmed a crucial claim construction—that claim 1, the '805 patent's sole independent claim, requires a steel sheet to have an ultimate tensile strength of 1500 MPa or higher—and further affirmed the prima facie obviousness of the asserted claims. *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1322, 1324-25 (Fed. Cir. 2012). The Court reversed, however, as to a second claim construction (the term "hot-rolled steel sheet"), broadening that term to encompass steel sheet that is also cold-rolled. *Id.* at 1321. To address this change in construction, the Court ordered remand proceedings to address two narrowly circumscribed issues. *Id.* at 1322, 1326.

As to the jury's verdict of no infringement, the Court affirmed the judgment of no infringement under the doctrine of equivalents, but because the case involves

different Defendants with distinct products, it remanded for determination of "which accused products would or would not literally infringe under the correct claim construction." *Id.* at 1322. As to the jury's verdict that the claims were obvious, the Court affirmed the claims were prima facie obvious, but remanded for consideration on the narrow issue whether, under its modified claim construction of "hot-rolled steel sheet," ArcelorMittal's evidence of purported commercial success "results from the claimed combination of elements that constitutes the invention" and, if so, whether that evidence could overcome the prima facie obviousness of the claims. *Id.* at 1326. As to both issues, the Court indicated summary judgment may be appropriate. *Id.*

ArcelorMittal sought rehearing of this Court's construction of "very high mechanical resistance," and rehearing *en banc* regarding the affirmance of the finding that the prima facie obviousness of the claims had been established and the limited remand. This Court denied the petition, and its mandate issued on March 27, 2013.

The case would have proceeded to implementation of the mandate, with the limited proceedings ordered by this Court, but-for ArcelorMittal's announcement that while pursuing the appeal it had secured a reissue patent, RE44,153 (the "RE153 patent"), whose claims reached accused products outside the scope of the original patent. Before filing its notice of appeal, ArcelorMittal had filed an application for reissue of the '805 patent, which it prosecuted in parallel with its appeal—without

informing Defendants or the Court. Even after this Court affirmed the district court's construction that the claims of the '805 patent were limited to steel sheet having an ultimate tensile strength of 1500 MPa or higher, ArcelorMittal continued to pursue—and secured—broadened claims in a reissue patent to reach steel sheet having an ultimate tensile strength *below* 1500 MPa. ArcelorMittal received a notice of allowance of its reissue claims on February 19, 2013, while its rehearing petition was pending, although again it did not inform the Court or Defendants.

The reissue patent issued on April 16, 2013, just weeks after this Court's mandate. That same day, ArcelorMittal filed new suits against Defendants for infringement of the RE153 patent, including based on product having an ultimate tensile strength below 1500 MPa that was noninfringing of the original '805 patent. (*See, e.g.*, A763, ¶ 16 ("when the aluminum coated, boron-containing steel sheet products are further processed, including by heat treatment and stamping, they have an ultimate tensile strength greater than 1000 MPa….").) ArcelorMittal also issued warnings, in press releases and letters to customers, that it would initiate patent infringement suits based on purchase from Defendants of steel sheet having an ultimate tensile strength above 1000 MPa—despite this Court's affirmance that such steel was outside the claims of the original, '805 patent.

In the remanded action, Defendants promptly requested permission to file a motion for summary judgment of non-infringement of the reissue patent, on the

ground that under the clear statutory command of 35 U.S.C. § 251, the RE153 patent could not validly claim subject matter already determined to be outside of the original patent (the '805 patent). In response, ArcelorMittal requested the opportunity to brief claim construction. The district court granted both requests.

In October 2013, the district court granted summary judgment in favor of Defendants, holding the reissue patent invalid based on ArcelorMittal's purposeful violation of Section 251 and also finding Defendants did not infringe the original claims requiring an ultimate tensile strength of 1500 MPa or higher. (A9-20.) The court rejected the proposition that the reissue proceedings could broaden the scope of the original, '805 patent claims, finding both that this Court's construction of those claims was the final word on the original patent's scope and that later reissue proceedings could not, in any event, serve to broaden the meaning of the claims of the original patent. (A15-16.) The court later denied ArcelorMittal's motion "to clarify or amend" the judgment regarding the invalidity of reissue claims 24 and 25 of the RE153 patent. (A1-6.)

This appeal concerns the fundamental question of the public's ability to rely on this Court's annunciation of the outer limits of an issued patent in the exercise of its power to construe patent claims, or, contrariwise, a patent-holder's ability to use reissue proceedings initiated more than two years after the original patent to expand its patent claims and thereby preclude the public from using subject matter this Court

had previously found it free to use.  Both the language and purpose of Section 251 of the Patent Act answer this question.

Section 251 expressly forbids the grant of a reissue patent "enlarging the scope of the claims of the original patent" unless the patentee applies for the reissue within two years of the original grant.  Congress's clear purpose in enacting the statute was repose, to enable the public "to plan their future conduct in as certain an environment as possible." *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1384 (Fed. Cir. 1998); *see In re Youman*, 679 F.3d 1335, 1342 (Fed. Cir. 2012) ("[A]fter the two year period, the public can definitively rely on the scope of the patent claims.").  Thus, both the clear language and purpose of the statute preclude a patent holder from using reissue to claim subject matter determined to be outside the scope of the original patent. *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n.2 (Fed. Cir. 1987) (reissue claim improperly broadens under Section 251 if it "contains within its scope any conceivable apparatus or process which would not have infringed the original patent.").

ArcelorMittal's reissue patent reflects a frontal assault on the statutory safeguards of Section 251.  Disappointed with this Court's and the district court's legal ruling that the '805 patent's claims were limited to steel sheet with a "mechanical resistance" (*i.e.*, ultimate tensile strength) above 1500 MPa, ArcelorMittal filed a reissue with the goal of obtaining broader claims that would, in its words, "reach

products not within the scope of that original construction." Blue Br. 22.

ArcelorMittal sought to make infringing the very product that this Court had held *not* to infringe the '805 patent and, in this way, deny the public, Defendants, and U.S. automakers the ability to plan their future conduct based on the outer bounds of ArcelorMittal's patent rights as determined by this Court. Indeed, not satisfied with the *in terrorem* effect of the reissue patent itself, ArcelorMittal issued press releases upon allowance of the reissue claims, and sent letters to automakers and other customers of Defendants, touting its new patent rights as covering steel down to 1000 MPa and warning that purchase of such steel from Defendants would place "the entire supply chain"—from steel sheet all the way through to vehicle—"at significant risk." (A544-45; A547-48; A550-51; A553-54.)

As the district court found, ArcelorMittal's conduct in obtaining and enforcing its reissue patent "offends the fundamental purpose of § 251, that is, repose," (A20), and the court properly held the RE153 patent invalid in its entirety. The Supreme Court long ago warned of the harms resulting from an improperly broadened reissue, in establishing the rule requiring a broadening reissue to be filed within two years, or not at all: "Every independent inventor, every mechanic, every citizen, is affected by such delay, and by the issue of a new patent with a broader and more comprehensive claim." *Miller v. Brass Co.*, 104 U.S. 350, 355 (1881). The Supreme Court thus explained "[t]he granting of a reissue for such a purpose, after an unreasonable delay,

*is clearly an abuse of the power to grant reissues, and may justly be declared illegal and void.*" *Id.* (emphasis added). The rule under *Miller*, and reflected in the language of Sections 251 and 282, is that a reissue patent improperly broadened more than two years outside the issuance of the original patent may be held invalid in its entirety. Particularly in view of ArcelorMittal's deliberate and egregious broadening, the district court properly exercised its discretion under the Patent Act and longstanding precedent to hold the RE153 patent invalid.

### B. Statement of Facts

#### 1. The Trial and First Appeal

On January 22, 2010, ArcelorMittal filed a complaint alleging infringement of the '805 patent by AK Steel Corporation, Severstal Dearborn, Inc., and Wheeling-Nisshin Inc. (A1375-85.) That action is no. 10-cv-00050 (the "050 action"). In the course of proceedings, the district court construed two limitations: The court construed "hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" to mean "a steel sheet that has been reduced to its final thickness by hot-rolling and coated with an aluminum or aluminum alloy coating," and the term "the steel sheet has a very high mechanical resistance" to mean "the flat-rolled steel has been subjected, after rolling, to additional controlled heating and cooling and has an ultimate tensile strength of 1500 MPa or greater." *ArcelorMittal France v. AK Steel Corp.*, 755 F. Supp. 2d 542, 549 (D. Del. 2010).

ArcelorMittal's claims were tried to a jury in January 2011.  Following the trial, the jury issued a verdict that AK Steel, Severstal, and Wheeling-Nisshin did not infringe any asserted claim of the '805 patent and that each asserted claim was invalid as anticipated and obvious.  (A1503-09.)  ArcelorMittal appealed.  *ArcelorMittal I*, 700 F.3d 1314.

On appeal, this Court affirmed the district court's construction of the term "very high mechanical resistance" in claim 1 of the '805 patent—the only independent claim of the patent—agreeing that "both the intrinsic evidence and extrinsic evidence support the district court's conclusion" that the term requires "an ultimate tensile strength of 1500 MPa or higher." *Id.* at 1322.  This Court also affirmed the judgment that the accused products did not meet this claim limitation under the doctrine of equivalents.  *Id.*  This Court reversed the district court's construction of the other disputed term, however, holding "[t]he correct construction of 'hot-rolled steel sheet' is 'a steel sheet that has been hot-rolled during its production.'" *Id.* at 1321.

This Court remanded the case on two narrow issues, and noted summary judgment may be appropriate on both.  *Id.* at 1326.  As to infringement, this Court remanded solely for confirmation of "which accused products would or would not literally infringe under the correct claim construction." *Id.* at 1322.  As to invalidity, the Court affirmed the verdict that the asserted claims were prima facie obvious, *id.* at 1323-25, but remanded for the limited determination of whether, under its

construction of "hot-rolled steel sheet," ArcelorMittal "has pertinent commercial success evidence sufficient to overcome the prima facie case of obviousness," *id.* at 1326. In so ruling, this Court explained that "although ArcelorMittal's commercial success evidence was before the jury," "the jury was proscribed from considering the commercial success of ArcelorMittal's cold-rolled steel sheet" due to the erroneous construction of "hot-rolled steel sheet." *Id.* at 1325. The Court further held, however, that ArcelorMittal had failed to preserve any argument with regard to other secondary considerations. *Id.* at 1325 n.6.

ArcelorMittal petitioned for rehearing or rehearing en banc, again challenging the construction of "very high mechanical resistance" in the '805 patent and also arguing the Panel erred in forbidding it from re-litigating infringement of this limitation under the doctrine of equivalents. The Court denied ArcelorMittal's petition on March 20, 2013, and issued its mandate on March 27, 2013.

> 2. The Reissue Patent

On August 8, 2011, months after the jury verdict and shortly before filing its appeal, ArcelorMittal filed an application for reissue of the '805 patent in the United States Patent and Trademark Office ("PTO"). (A93.) The application was filed nearly ten years after the '805 patent issued in October 2001. (*Id.*) Although a jury had found the claims of the '805 patent invalid, and this Court affirmed their prima

facie obviousness, the patent examiner made no comment on the prior art and issued no substantive rejection. The RE153 patent issued on April 16, 2013. (A93.)

The RE153 patent added to claims 1-16 of the '805 patent a number of new dependent claims: reissue claims 17-25. (A96.) Reissue claim 23 is a newly added dependent claim reciting "[t]he coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1000 MPa." (*Id.*)

While prosecuting its reissue application, ArcelorMittal simultaneously pursued its appeal before this Court, in which this Court affirmed the construction of "very high mechanical resistance" requires an ultimate tensile strength above 1500 MPa. At no time during the prosecution of the reissue patent did ArcelorMittal advise Defendants, this Court, or the district court of its reissue application. Nor did ArcelorMittal seek to stay proceedings based on the new claims it was seeking in the reissue application.

ArcelorMittal received a notice of allowance of the reissue claims on February 19, 2013, while its petition for rehearing was pending. (A556.) ArcelorMittal did not bring the allowance of the claims to this Court's attention or argue it had any relevance to its challenge to the claim construction of the '805 patent.

When this Court denied ArcelorMittal's petition for rehearing, ArcelorMittal did not withdraw or amend its broadening reissue claims; undeterred, ArcelorMittal

instead issued a press release asserting "[t]he Court's most recent decision comes after the decision on February 19, 2013 of the [PTO] allowing re-issue of the ArcelorMittal patent, confirming its full validity and scope as applying in particular to cold-rolled steel for hot stamping *with a final UTS of more than 1000 MPa*." (A553-54 (emphasis added).) Although this Court had ruled the '805 patent is limited to steel sheet with an ultimate tensile strength above 1500 MPa, ArcelorMittal trumpeted that it received broadened patent protection for steel "with a Ultimate Tensile Strength of *1,000 megapascal (MPa) or higher*." (A550-51 (emphasis added).) ArcelorMittal warned the market that "importation into the United States of steel, steel parts or vehicles containing the infringing steel may also be subject to legal action" and "[i]nfringement of ArcelorMittal's Usibor®-AS patent by other steelmakers places the entire supply chain at significant risk for financial and reputational consequences." *Id.*

The day its reissue patent issued, ArcelorMittal filed new patent infringement complaints against Defendants, alleging infringement of the reissue patent based on products having an ultimate tensile strength below 1500 MPa. (A763.) In a press release, ArcelorMittal touted its new complaints against Defendants "follow[ing] the [PTO's] reissuance of patent RE44,153 … covering the domestic production of Usibor®-AS as a hot rolled or cold rolled steel with a Ultimate Tensile Strength of 1,000 megapascal (MPa) or higher after hot forming." (A553.)

ArcelorMittal's general counsel in North America also wrote letters to prospective customers of Defendants repeating these threats and warning, "we want to inform you of the situation and potential risks associated with using aluminum pre-coated hot rolled or cold rolled steels with UTS of 1,000 MPa or higher that is not produced by ArcelorMittal. This is an infringement of ArcelorMittal's Usibor®-AS patent, which may result in the company recovering damages and other remedies." (A544-45; A547-48.)

3.   The Remand

On remand, ArcelorMittal substituted the '805 patent, now surrendered under the reissue statute, with the RE153 patent. Defendants moved for summary judgment of non-infringement based on the lack of evidence of literal infringement of the "very high mechanical resistance" claim limitation, as well as based on the invalidity of the reissued patent for improper enlargement of claim scope. (A400-13; A414-76.)

In its motion, AK Steel explained that summary judgment of non-infringement should be granted because ArcelorMittal conceded at trial, including during both its opening statement and in closing argument, that AK Steel's products had an ultimate tensile strength below 1500 MPa and thus did not literally infringe the "very high mechanical resistance" claim limitation. (A1073 at 126:4-8; A1347 at 1124:25-1125:6.) ArcelorMittal's own expert admitted, both on direct and cross-examination, that AK Steel's accused product did not literally infringe because it had a strength below 1500

MPa (A1172 at 430:8-13, 431:4-8; A1181 at 465:3-8.) AK Steel also argued that ArcelorMittal could not use the RE153 patent to reach steel with an ultimate tensile strength below 1500 MPa because to do so would necessarily mean that the claims were enlarged over the original, '805 patent in violation of section 251, rendering the reissue patent invalid as a matter of law.

Defendants-Appellees Severstal and Wheeling-Nisshin joined in AK Steel's motion for summary judgment as to common issues, and also argued that their accused products (which differ from AK Steel's) did not literally infringe because the only evidence that their steel had been thermally treated to achieve an ultimate tensile strength of 1500 MPa or greater was ArcelorMittal's expert having himself thermally treated the steel to achieve this. (A407-08.)

ArcelorMittal argued that the RE153 patent encompassed accused products having an ultimate tensile strength below 1500 MPa—which did not infringe the '805 patent—but argued that notwithstanding the clear terms of Section 251 this broader scope should be permitted. (A486-89.) Despite this Court's narrowly circumscribed remand, ArcelorMittal also moved to reopen the record on remand (as to steel allegedly having an ultimate tensile strength above 1500 MPa) by submitting declarations purportedly showing post-trial acts of infringement by Defendants. (A511-12; A513-16.)

In October 2013, the district court granted summary judgment for Defendants (A8), finding that "[a]s conceded by ArcelorMittal, the accused products did not meet the [very high mechanical resistance] limitation at issue, as construed by the Federal Circuit" (A17). (*See also id.* at A14 -15 ("ArcelorMittal concedes (by not addressing) the fact that the trial record has no evidence of past infringement of claim 1 of the '805 patent as construed by the Federal Circuit.").) The court declined ArcelorMittal's request to reopen the record to consider purported "new acts of infringement," an issue "not presented to the jury at the original trial and … not part of the record at bar." (A17 n.9.)

The district court further held the RE153 patent invalid for deliberately enlarging the scope of the claims of the original patent in clear violation of Section 251. (A19-20.) The court found that "[t]here can be no doubt that ArcelorMittal pursued its reissue patent as an intentional strategy to avoid the court's narrow claim construction, with the ultimate goal of capturing more acts of infringement under the broadening scope of new dependent claim 23 of the RE153 patent." (A19.) Explaining that ArcelorMittal sought this broadening nearly a decade after issuance of the original patent (A10 n.4; A19-20), the court "conclude[d] that ArcelorMittal's post-trial strategy offends the fundamental purpose of § 251, that is, repose," (A20). And, with "the [reissue] patent having been improperly broadened in violation of §

251, the court decline[d] to exercise its inherent equitable powers to resurrect the original scope of the '805 patent as requested by ArcelorMittal." (A19.)

ArcelorMittal filed a motion under Rule 59 "to clarify or amend" the district court's judgment that all claims of the RE153 patent were invalid. (A653-67.) The court denied the motion, reiterating that it exercised its discretion to hold the RE153 patent invalid in its entirety given the circumstances of the case. (A5-6.) The district court explained that similar to this Court's precedent in *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577 (Fed. Cir. 1995), "ArcelorMittal seeks to end-run the consequences of violating 35 U.S.C. § 251" and that it "declines to exercise its inherent equitable powers to resurrect the original scope of the '805 patent as requested by ArcelorMittal." (A6.) The district court then entered judgment in favor of Defendants. (A1.)

### 4. The 685 and 686 Actions

ArcelorMittal also filed two new actions in the district court, on the day the RE153 patent was issued, alleging infringement of the RE153 patent. ArcelorMittal filed one complaint, no. 13-cv-00685 (the "685 action"), against AK Steel (A760-72), and another, no. 13-cv-00686 (the "686 action"), against Severstal and Wheeling-Nisshin (A943-55). Defendants moved to dismiss ArcelorMittal's claims for infringement of the RE153 patent by product having an ultimate tensile strength less than 1500 MPa on the ground that the reissued patent was improperly broadened and

thus invalid as a matter of law. (A773-80; A956-61.) On December 5, 2013, the

district court entered judgments in favor of Defendants dismissing the complaints on

the ground that the RE153 patent is invalid for the reasons stated in the 050 action.

(A21; A27.)

ArcelorMittal appealed from the judgments in all three cases. On February 28,

2014, this Court consolidated all three appeals.

## **SUMMARY OF THE ARGUMENT**

Claims 1-23 of the reissue patent were impermissibly broadened in violation of

the express prohibition of Section 251, which provides that "[n]o reissued patent

shall be granted enlarging the scope of the claims of the original patent unless applied

for within two years from the grant of the original patent."[1] Under the well-

established standard for broadening, a reissue claim is broadened if it "contains within

its scope any conceivable apparatus or process which would not have infringed the

original patent." *Tillotson*, 831 F.2d at 1037 n.2.

ArcelorMittal concedes that reissue claims 1-23 are broader than the '805

patent as construed by this Court, and deliberately so. This Court definitively

construe the scope of the '805 patent's claims, holding that their requirement of

---

[1] Section 251 was amended by the Leahy-Smith America Invents Act, Pub. L. No.
112-29, 125 Stat., 284 (Sept. 16, 2011). Because the reissue patent was filed before the
effective date for sections 4(e) and 20(l) of the AIA, this brief cites the pre-AIA
version of Section 251 and other sections of title 35.

"very high mechanical resistance" was limited to steel sheet having "an ultimate tensile strength of *1500 MPa or greater.*" *ArcelorMittal I*, 700 F.3d at 1321-22 (emphasis added). Per ArcelorMittal, "[b]ecause reissue claims 1 through 23 reach steel with a mechanical resistance greater than 1000 MPa, they reach products not within the scope of that original construction." Blue Br. at 22. ArcelorMittal has thus done exactly what Section 251 and precedent forbid—alleging infringement based on product found not to infringe the original patent.

ArcelorMittal's sole defense for its conduct is an argument that the PTO's allowance of the broadened claims in the reissue application served to change the meaning of the original patent's claims and to nullify this Court's construction of the original patent. This argument is wrong.

This Court's construction of "very high mechanical resistance" in the '805 patent—a decision on an issue of law—is law of the case and stare decisis, unaltered by the PTO's grant of the RE153 patent. *See, e.g.*, *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1219 (Fed. Cir. 2007). The district court correctly recognized "[c]laim construction is a legal exercise" and this Court "has construed the claims of the '805 patent and … has done so finally." (A15.) The construction of the original '805 patent was not, and could not be, overturned by the PTO. Indeed, there is no support for ArcelorMittal's bold assertion that a patent examiner's allowance of broadened reissue claims negates and displaces this Court's express construction of

the original patent. Rather, the PTO's decision to grant the reissue patent was legal error, the plain consequence of which is invalidity under 35 U.S.C. § 282.

Moreover, the allowance of the reissue claims is not "new evidence" that could support changing this Court's construction of the *original patent's* claims. The reissue application, filed nearly a decade after issuance of the '805 patent, plainly is not part of the original patent, and the reissue proceedings provide no evidence of the scope of the *original patent's* claims. This Court was not missing any intrinsic evidence when it construed the '805 patent, nor can ArcelorMittal claim otherwise. And this Court has rejected the very argument ArcelorMittal makes here that grant of a reissue patent or re-examination claims provides evidence of the meaning of the *original* claims. *See Total Containment, Inc. v. Environ Products, Inc.*, 106 F.3d 427, 1997 WL 16032, at *2 (Fed. Cir. 1997) (unpublished); *see also Brady Const. Innovations, Inc. v. Perfect Wall, Inc.*, 290 F. App'x 358 (Fed. Cir. 2008) (unpublished). ArcelorMittal ignores this authority, which the district court discussed in its opinion. (A16.)

ArcelorMittal's position that grant of a reissue patent serves to impose a new, broader meaning on the claims of the original patent would also subvert Section 251 and its statutory purpose of providing the public notice of the boundaries of a patent. *See Youman*, 679 F.3d at 1342 ("[A]fter the two year period, the public can definitively rely on the scope of the patent claims."); *Vectra*, 162 F.3d at 1384 (invalidating reissue claims reclaiming subject matter within the original patent claims but subsequently

disclaimed because "[t]he public is entitled to rely upon the public record in determining the scope of the patent's claims").

ArcelorMittal's argument also fails because the allowance of the reissue claims is not "new" evidence in any event. ArcelorMittal received the allowance during its prior appeal, while pursuing its rehearing petition. Despite specifically seeking to overturn this Court's construction of "very high mechanical resistance," ArcelorMittal never sought to introduce the allowance of the reissue claims as evidence supporting its position. Having failed to raise this "evidence" in the first appeal when it had an opportunity, ArcelorMittal cannot claim it meets the exceptional circumstance of "new evidence" justifying departure from the law of the case.

The district court, confronted with ArcelorMittal's deliberate broadening in defiance of the definitive construction of the '805 patent and the clear statutory prohibition of Section 251, properly held the RE153 patent invalid. (A19-20.) The court found "[t]here can be no dispute that ArcelorMittal pursued its reissue patent as an intentional strategy to avoid the consequences of this court's narrow claim construction with the ultimate goal of capturing more acts of infringement under the broadening scope of new dependent claim 23 of the RE153 patent." (A19-20.) ArcelorMittal has used its unlawfully broadened reissue patent to stifle competition by products this Court affirmed were noninfringing of the '805 patent and multiplied legal proceedings (including filing the 685 and 686 Actions).

Having engaged in an intentional strategy to frustrate this Court's mandate in the prior appeal, one which flagrantly violated Section 251, ArcelorMittal contends the district court lacked power to invalidate two dependent claims newly added in its unlawful reissue application (reissue claims 24-25) because those claims were themselves not broadened over the '805 patent. The statutory text of Section 251 and Section 282, and longstanding precedent, however, clearly establish the court's power to invalidate the RE153 patent in its entirety, and the court was well within its discretion given ArcelorMittal's egregious conduct.

Section 251 provides that "[n]o reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent," explicitly speaking in terms of the reissued *patent*, not particular claims. Likewise, Section 282 provides that defenses to patent infringement include "[i]nvalidity of *the patent* or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title" (emphasis added), expressly providing that violation of Section 251 may render the entire patent, not merely particular claims, invalid.

The language Congress chose in the Patent Act accords with longstanding precedent holding that courts have power to invalidate a broadened reissue patent in its entirety where the patentee obtained it more than two years after the original patent issued. As early as *Miller v. Brass Co.*, 104 U.S. 350, 353 (1881), the Supreme

Court held "[t]he granting of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the power to grant reissues, and **may justly be declared illegal and void**," *id.* at 355 (emphasis added). *Miller* was well-understood to empower courts to invalidate a reissue patent in its entirety where it had been broadened outside of the two-year limit—just as the language of Section 251 indicates.

ArcelorMittal principally argues that Section 253 somehow precludes invalidation of a patent in its entirety under Section 251, but fails to acknowledge that this Court considered and rejected that very argument in *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 882 F.2d 1556, 1566-67 (Fed. Cir. 1989). Indeed, this Court recognized that "some precedent exists to support invalidation of all claims when the reissue declaration is found wanting" and that based on the statutory scheme, "[l]ogically, it would follow that" a patentee who filed a defective reissue application "has no claims to enforce." *Id.* The Court ultimately concluded "under the circumstances" of *Hewlett-Packard*, concerning defective affidavits rather than deliberately broadened claims, it was unnecessary to invalidate unchanged claims that simply carried over from the original patent because they were not infected by the improper affidavits. But the Court's analysis recognizes courts have the underlying *power* to invalidate a reissue patent obtained in violation of Section 251. And ArcelorMittal wholly disregards that, unlike in *Hewlett-Packard*, reissue claims 24-25 were newly added in the unlawful reissue application as part of its scheme to broaden its patent rights. All of

the original patent's claims were broadened in reissue, and the district court correctly

held reissue claims 24-25, which were added only in a defective reissue application,

invalid for violation of Section 251.

In challenging only the court's *power* to invalidate the reissue patent in its

entirety, ArcelorMittal makes no argument that the court abused its discretion if it had

such power, thus waiving any such argument. Regardless, the district court was well

within its discretion to do so. Allowing newly added reissue claims 24-25 to stand

would be inequitable, permitting ArcelorMittal to recover its original claim scope

despite having "pursued … an intentional strategy to avoid the consequences of this

court's narrow claim construction, with the ultimate goal of capturing more acts of

infringement" (A19) and having added these claims in an unlawful reissue application.

Such an outcome would invite more such gamesmanship from patentees to

circumvent adverse claim constructions. *Cf. Quantum Corp. v. Rodime, PLC*, 65 F.3d

1577 (Fed. Cir. 1995) ("If the only penalty . . . is a remand to the PTO to have the

reexamined claims narrowed . . . then applicants will have an incentive to attempt to

broaden their claims"). As the district court explained, "ArcelorMittal's post-trial

strategy offends the fundamental purpose of § 251, that is, repose." (A20 (citing

*Youman*, 679 F.3d at 1342)); *see also Miller*, 104 U.S. at 355 ("Such a process of

expansion carried on indefinitely, without regard to lapse of time, would operate most

unjustly against the public, and is totally unauthorized by the law.").

There are also independent grounds to affirm the judgment of no infringement. First, the district court found "ArcelorMittal concedes (by not addressing) the fact that the trial record has no evidence of past infringement of claim 1 of the '805 patent as construed by the Federal Circuit." (A15.) The undisputed evidence established that AK Steel's accused product has an ultimate tensile strength below 1500 MPa, and under this Court's mandate limiting the remand on infringement "to literal infringement," *ArcelorMittal I*, 700 F.3d at 1322, the district court properly found AK Steel did not infringe the '805 patent's claims and thus could not infringe the RE153 patent. ArcelorMittal does not contest this well-supported finding in its Appellants' brief, waiving any such challenge.

Second, even if reissue claims 24-25 were not invalid due to the broadening of the RE153 patent, their invalidity should still be affirmed consistent with the mandate of *ArcelorMittal I* on the ground that ArcelorMittal cannot overcome the prima facie case of obviousness this Court affirmed. *ArcelorMittal I*, 700 F.3d at 1323. This Court remanded only for consideration "whether ArcelorMittal has pertinent commercial success evidence sufficient to overcome the prima facie case of obviousness," and observed that "absent a demonstrated nexus, ArcelorMittal's commercial success evidence is not significant." *Id.* at 1326. The record reflects that ArcelorMittal cannot demonstrate the requisite nexus because its evidence of purported commercial success

was based on product outside the claims—Usibor product having an ultimate tensile strength below 1500 MPa.

Therefore, the district court's judgment should be affirmed.

## ARGUMENT

## I.   STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *See Minkin v. Gibbons, P.C.,* 680 F.3d 1341, 1358 (Fed. Cir. 2012). "Whether the claims of a reissue patent violate 35 U.S.C. § 251, and thus are invalid, is a question of law, which [the Court] review[s] de novo." *N. Am. Container, Inc. v. Plastipak Packaging, Inc.,* 415 F.3d 1335, 1349 (Fed. Cir. 2005). Whether the district court has legal authority to invalidate a reissue patent in its entirety is a matter of law determined *de novo*; however, the court's exercise of its discretion to do so, if it has such power, would be reviewed (had ArcelorMittal raised such a challenge) solely for abuse of discretion. A district court's decision not to reopen the record on remand is reviewed under the law of the regional circuit, *Enzo Biochem, Inc. v. Calgene, Inc.,* 188 F.3d 1362, 1370 (Fed. Cir. 1999), which under Third Circuit law is reviewed for abuse of discretion, *id.*

## II.   THE DISTRICT COURT CORRECTLY HELD THAT THE REISSUE PATENT WAS BROADENED IN VIOLATION OF 35 U.S.C. § 251

Nearly a decade after issuance of the original '805 patent, and months after an adverse jury verdict, ArcelorMittal filed for a reissue patent with claims broader than the '805 patent's claims as construed by this Court. ArcelorMittal obtained the RE153

patent in clear violation of 35 U.S.C. § 251, which provides that "[n]o reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."

Although both the district court and this Court held the claims of the '805 patent were limited to steel sheet with a "mechanical resistance" (ultimate tensile strength) of 1500 MPa or higher, ArcelorMittal expressly sought claims in the reissue patent extending to steel with a mechanical resistance over 1000 MPa. ArcelorMittal admits in its brief that reissue claims 1 through 23 "reach products not within the scope of that original construction." Blue Br. at 22. This is the very definition of improper broadening under this Court's established test. *See Tillotson*, 831 F.2d at 1037 n.2 (a reissue claim is impermissibly broadened if it "contains within its scope any conceivable apparatus or process which would not have infringed the original patent"). There is thus no dispute that, if this Court's prior construction of the original '805 patent retains vitality, as it does, then claims 1 through 23 of ArcelorMittal's reissue patent are baldly invalid under Section 251.

ArcelorMittal's sole defense of those claims is an argument that this Court's construction of the '805 patent was vitiated by the grant of the reissue patent, which ArcelorMittal argues serves not just to give meaning to the reissue claims, but also to give a new meaning to the '805 patent's claims. According to ArcelorMittal, the

reissue patent, "and specifically reissue claim 23, provides important new evidence regarding the meaning of the original claim language."  Blue Br. at 22.

ArcelorMittal is wrong.  First, this Court construes patent claims as a matter of law, and hence its construction of the original '805 patent claims constitutes both law of the case and stare decisis, and the PTO lacks the power to alter that construction through its own interpretation of claims.  Second, the reissue proceedings here are not, in any event, "new evidence" regarding the original patent, both because the reissue is not evidence of the meaning of the original claims and because the reissue claims were allowed during the prior appeal and are not "new" evidence.  Either reason suffices to affirm the district court's judgment that claims 1 through 23 are invalid.

### A.   This Court's Construction Of The Original '805 Patent Is Binding Law As To The Meaning Of That Patent And Is Not Vitiated By The PTO's Grant Of A Broadened Reissue Patent.

There being no dispute that reissue claims 1-23 are broadened over the claims of the '805 patent as construed by this Court, ArcelorMittal resorts to arguing that the PTO's grant of the reissue patent nullified this Court's construction and retroactively broadened the scope of the surrendered '805 patent.  ArcelorMittal is wrong, as the district court recognized, and advances a position that flies in the face of precedent (much of which it fails even to address).

As a threshold matter, ArcelorMittal abandoned this argument below. After initially asking the district court to disregard this Court's construction of the '805 patent and construe that patent anew, ArcelorMittal changed tack and told the district court that "[f]urther construction of the '805 patent is no longer necessary or relevant." (A612); *see also* A19 n.10 (district court noting "ArcelorMittal's inconsistent requests to reconstrue claim 1").) ArcelorMittal should not be heard now to assert error because the district court determined "that this Court's mandate in *ArcelorMittal I* barred it from revisiting its construction of the '805 patent." Blue Br. 22. "Ordinarily, doctrines of estoppel, waiver, invited error, or the like would prohibit a party from asserting as 'error' a position that it had advocated," *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998), and ArcelorMittal should be precluded from claiming error when it had informed the district court that "further construction" of the '805 patent was not required.

Regardless, even had ArcelorMittal not abandoned the argument, its argument that the PTO's grant of the RE153 patent vitiated this Court's claim construction has no merit. ArcelorMittal disregards that this Court's claim constructions are law of the case and entitled to stare decisis, and fundamentally misapprehends that the PTO's actions in a reissue proceeding cannot overturn this Court's express construction of the original patent.

- 30 -

1. <u>This Court's Construction of the '805 Patent Is Law of the Case and Entitled to Stare Decisis</u>

This Court's claim construction of the original '805 patent is law of the case and entitled to stare decisis, binding on both the district court and subsequent panels of this Court. *See, e.g., Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011) ("This court is bound by the claim construction of this court in [an earlier decision] for the term 'bus.' Hynix's arguments on the merits … are inapposite; this court is not writing on a clean slate.")[2]; *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) ("In the previous appeal, this court established the construction of all the claim terms in dispute. Thus, claim construction need not be repeated here, as our prior construction is law of the case."); *see also Brady Construction*, 290 Fed. App'x at 363 ("Under the principles of stare decisis and the Supreme Court's guidance in *Markman*, this court follows the claim construction of prior panels absent exceptional circumstances.").[3]

Indeed, as this Court recently reaffirmed *en banc*, claim construction is an issue of law. *See, e.g., Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d

---

[2] In *Hynix*, the issue was whether the Court's en banc decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) implicitly over-ruled its earlier claim construction. *Id.* at 1350-51. ArcelorMittal makes no argument of any intervening change in law, and its assertion that an intervening action of the PTO can vitiate this Court's prior construction of a patent has the relationship between the Court and the agency backwards.

[3] *Accord E-Pass Techs.*, 473 F.3d at 1219; *AFG Industries, Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1372 (Fed. Cir. 2004).

1272, 1276–77 (Fed. Cir. 2014) (en banc). In construing the '805 patent in *ArcelorMittal I*, this Court considered and expressly resolved that issue of law, and denied ArcelorMittal's petition for rehearing on that very issue.

2.  <u>This Court's Construction of the '805 Patent Was Not Subject To Alteration by a Patent Examiner.</u>

A patent examiner's allowance of the reissue claims does not supersede this Court's claim construction of the '805 patent. As the Court has explained, "[a] claim construction articulated by a prior panel decision of this court ordinarily remains the law of the case unless it is in conflict with a subsequent decision by this court sitting en banc or by the Supreme Court." *E-Pass Techs.*, 473 F.3d at 1219; *see also Deckers Corp. v. United States*, -- F.3d --, No. 2013-1356 (Fed. Cir. May 13, 2014) (explaining, in applying stare decisis to an earlier construction of a customs classification provision, that "a later panel is bound by the determinations of a prior panel, unless relieved of that obligation by an en banc order of the court or a decision of the Supreme Court."). There has been no intervening *en banc* decision of this Court or decision of the Supreme Court calling into question this Court's resolution of this issue of law, nor does ArcelorMittal argue otherwise.

ArcelorMittal makes a fundamental error of law in asserting the PTO's grant of broader reissue claims casts doubt on this Court's narrower construction of the original patent's claims. According to ArcelorMittal, the later reissue grant by the PTO establishes the proper construction of the original claims. *See* Blue Br. 31-32.

But ArcelorMittal misapprehends the relationship between this Court and the PTO. *See, e.g., Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1331 (Fed. Cir. 2008) ("No one suggests that the PTO has power to exercise review authority over a judgment of a federal trial court."). This Court's rulings on questions of law are controlling. ArcelorMittal's suggestion that the examiner, in allowing broadened reissue claims, construed the original patent claims differently than this Court's binding decision, serves simply to establish legal error in failing to follow this Court's ruling.[4]

ArcelorMittal's reliance on *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013), is entirely misplaced. *Fresenius* concerned the impact on remedies of the PTO's cancellation of claims in reexamination after this Court had affirmed that those claims were not shown to be invalid in district court and had remanded for a determination of remedies. *Id.* at 1333-34. But cancellation by the PTO and invalidation by a court are different issues, subject to different analysis based on different factual records. *See In Re Baxter*, 678 F.3d 1357, 1365 (Fed. Cir. 2012) (explaining "the two proceedings necessarily applied different burdens of proof and relied on different records"). The issue in *Fresenius* was *not* whether the PTO's decision to cancel claims called into question the correctness of the Court's affirmance of a verdict of no invalidity. Indeed, the Court expressly noted the PTO

---

[4] The error may be understandable given that the PTO ordinarily applies the "broadest reasonable interpretation" standard in patent examination, but it is error nonetheless.

does not have power to call into question the Court's ruling where the issue is the same. *See* 678 F.3d at 1366 ("Thus, this case is not about the relative primacy of the courts and the PTO, about which there can be no dispute."). Instead, *Fresenius* concerned the wholly different question of whether the patentee's entitlement to damages was sufficiently final in the action to preclude giving effect to the cancellation of claims. *See* 721 F.3d at 1347. *Fresenius* has no relevance here, where ArcelorMittal erroneously seeks to give primacy to the PTO's purported implicit construction of the original '805 patent over the express ruling of this Court on that very same issue.

### B. The Grant Of A Reissue Patent Is Not "New Evidence" That Could Undermine This Court's Construction Of The '805 Patent.

ArcelorMittal's attempt to jettison this Court's prior construction of the original '805 patent based on subsequent reissue proceedings it initiated is wrong for a second and independent reason. ArcelorMittal's reissue patent is in no way "new evidence regarding the meaning of the original claim language," as ArcelorMittal argues, Blue Br. at 22, because it is neither evidence of the meaning of the original patent nor new. ArcelorMittal asserts no other exception to the law of the case doctrine (or mandate rule), nor could it. Accordingly, the reissue provides no basis for departing from this Court's construction of the '805 patent, *ArcelorMittal I*, 700 F.3d at 1322.

1.    <u>The Prosecution of a Reissue Application Provides No Evidence
as to the Meaning and Scope of the Original Patent's Claims.</u>

The prosecution of the reissue application did not, and could not, create "new evidence" concerning the proper interpretation of *the '805 patent*. The '805 patent had been in force for a decade before this Court addressed its proper construction in *ArcelorMittal I*. In the prior appeal, this Court had before it the pertinent intrinsic and extrinsic evidence as to how the term "very high mechanical resistance" would have been understood at the time of the invention of the '805 patent.

The prosecution history of the reissue patent may provide evidence as to the proper construction of the *reissue patent claims*, but it does not provide any evidence as to the construction of *the original patent*'s claims. The district court recognized this. (A16-17.) ArcelorMittal fails even to address the authority discussed by the court.

Tellingly, ArcelorMittal musters no authority that later prosecution in reissue or reexamination proceedings can be used to *broaden* the scope of claims of a previously issued patent.[5] And ArcelorMittal's reasoning that the issuance of reissue claims can retroactively change the meaning of the original patent's claims squarely conflicts with precedent, including this Court's holding in *Tillotson* that "[a] claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original

---

[5] This is not a case where a patentee *narrowed* the scope of the claims in a later prosecution through disavowal or clear disclaimer.

patent." *Tillotson*, 831 F.2d at 1037 n.2. *Tillotson* requires a comparison of the scope of the claims of the original patent to the reissue claims after "careful interpretation of the original and reissue claims," *id.* at 1039, an exercise that would be wholly unnecessary if the original patent's claims were to be interpreted to be broader than or coextensive with the claims of the reissue patent.

ArcelorMittal further ignores *Anderson v. International Engineering & Manufacturing, Inc.*, which expressly rejected a patentee's argument—paralleling ArcelorMittal's argument here—that "the reexamined claims clarify" the meaning of a term in independent claim 1 of the original patent as encompassing the defendant's accused product. 160 F.3d 1345, 1347 (Fed. Cir. 1998). Faced with a prohibition on broadening claims in re-examination, the patentee argued (as ArcelorMittal does here) that "the claims have always encompassed" this broader meaning, and that the changes "simply clarified the scope of the claim as originally granted." *Id.* at 1348-49. The Court explicitly rejected that approach:

> The ultimate question of construction is not whether Anderson's specification could have supported claims of the scope he now attributes to original claim 1.... The question is whether, objectively viewed, the original claims were, in fact and in law, generic [i.e., broad] as Anderson asserts.

*Id.* at 1349. The Court construed the original claims based on the intrinsic evidence of the original patent and concluded the original claims were narrower than the claims of the reexamined patent. *Id.* at 1350.

- 36 -

Likewise, in *Total Containment*, this Court rejected a patentee's arguments that new dependent claims added in re-examination supported a broader interpretation of the original patent claims, recognizing that "[t]o permit the use of claims added during reexamination for that purpose would invite manipulation of the reexamination process *and would not be a reliable guide to the meaning of language used in the original claims*." 106 F.3d 427, 1997 WL 16032, at *2 (unpublished) (emphasis added). The Court thus affirmed a district court's holding that "[c]laims added during reexamination are not an appropriate guide for construing the meaning of original claims and terms used in original claims." *Total Containment, Inc. v. Environ Products, Inc.*, 921 F. Supp. 1355, 1385 (E.D. Pa. 1995), *aff'd*, 106 F.3d 427 (Fed. Cir. 1997) (unpublished).

In *Brady Construction Innovations*, another case in which a patentee used reissue proceedings to obtain broader claims in reissue after losing an infringement case under its original patent, this Court again rejected the argument that it should not follow its claim construction of the original patent based on the later grant of a reissue patent. 290 F. App'x 358 (Fed. Cir. 2008). Far from finding its prior determination of the scope of the original claims moot, this Court found it controlling on the later proceedings, ruling that, as a matter of law, Section 251 precluded enforcement of the reissue patent against subject matter outside the original patent. *See id.* at 363-64.

ArcelorMittal fails to address this precedent foreclosing its argument. Instead, it points to two district court opinions, Blue Br. at 33-34, but even these unreviewed

opinions are inapposite. In *Eolas Technologies Inc. v. Microsoft Corp.*, No. 99-C-626, 2007 WL 7597509 (N.D. Ill. July 17, 2007), the district court concluded that later prosecution in re-examination, which was alleged to have narrowed claims, afforded no basis to depart from this Court's construction because it was the law of the case, and expressly *rejected* the argument that the "new evidence" exception applied. *Id.* at *1, *5-6. *Golden Bridge Tech., Inc. v. Apple Inc.*, 937 F. Supp. 2d 490 (D. Del. 2013) did not involve a claim construction affirmed by this Court, *see id.* at 494 ("The Federal Circuit did not consider or address claim construction."), nor a question of departing from the law of the case; further, the court addressed only the meaning of a re-examined patent's claims, not the meaning of claims of the original patent before re-examination, *see id.* at 493-97.

Further, ArcelorMittal's position that many years after issuance of a patent, the patentee can broaden the original patent's scope through reissue proceedings in the PTO is flatly inconsistent with finality in claim construction and Section 251's statutory purpose. "There is no dispute as to the importance of national uniformity and finality of claim construction," *Lighting Ballast*, 744 F.3d at 1280, but ArcelorMittal's proposed rule would demolish finality. A party disappointed in a claim construction could always develop new "facts" not considered by this Court. ArcelorMittal's approach would also invite abuse by patentholders, who could use proceedings such as reissue or re-examination to try to manipulate the evidence as to

the scope of the original claims. *Cf. id.* at 1293 (Lourie, J., concurring) (cautioning against reliance on evidence post-dating the patent grant in construing claims: "It too is subject to ex post facto thinking based on self-interest; the inventor had his chance to define his invention and should not be heard in later testimony to get another bite at the apple by redefining that language."). The circumstances here exemplify the profound risk of gamesmanship by patentees initiating post-grant proceedings to circumvent what they consider unduly narrow claim constructions.

ArcelorMittal's approach also subverts the very purpose of the statutory two-year limit on broadening reissue, to provide repose so that "the public can definitively rely on the scope of the patent claims." *Youman*, 679 F.3d at 1342. ArcelorMittal's attempt to broaden the '805 patent almost ten years after its grant spurns the principle of public notice of the scope of patent rights, which is essential "to apprise the public of what is still open to them." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (quoting *McClain v. Ortmayer*, 141 U.S. 419, 424 (1891)). As ArcelorMittal would have it, the public would have no way to determine the extent of potential patent rights. *See, e.g., Vectra Fitness*, 162 F.3d at 1384 (invalidating reissue claims reclaiming subject matter within original claims but subsequently disclaimed because otherwise "[t]he public could never rely on the scope of the non-disclaimed claims").

## 2. ArcelorMittal Is Wrong that the Reissue Patent Is "New Evidence" and This Alone Defeats Its Argument.

Additionally, the allowance of the reissue claims is not "*new*" evidence" at all. ArcelorMittal filed its reissue application with the broadened claims before its first appeal, but never disclosed this application to the Court (or Defendants), never argued to the Court that its reissue application may bear on claim construction issues, and never requested to stay proceedings while it prosecuted the reissue application. During the prior appeal, ArcelorMittal had in hand the allowance of all claims of the RE153 patent. That allowance came on February 19, 2013, when ArcelorMittal's rehearing petition was pending challenging the Court's construction of the "very high mechanical resistance" term. (A556.) Yet, ArcelorMittal chose not to bring it to the Court's attention.

ArcelorMittal's failure to raise the purportedly "new evidence" during the prior appeal, when it indisputably possessed it, alone defeats its attempt to use the narrow "new evidence" exception to the law of the case doctrine. Departures from the law of the case doctrine "are rare," *Toro Co. v. White Consolidated Industries, Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004), and it is well established that the new-evidence exception requires "showing that significant new evidence, **not earlier obtainable** in the exercise of due diligence, has come to light," *McCullen v. Coakley*, 708 F.3d 1, 5 (1st Cir. 2013) (emphasis added). *See, e.g.*, *Moore v. Bennette*, 517 F.3d 717, 727 n.2 (4th Cir. 2008) (same); *Unites States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996) (same).

- 40 -

Moreover, the exceptions to the law of the case doctrine "are narrowly circumscribed." *McCullen*, 708 F.3d at 5. Far from having "new evidence," ArcelorMittal could have raised in the prior appeal the allowance of the reissue claims, if ArcelorMittal truly thought it provided evidence of the proper construction of the '805 patent. Having chosen not to do so, ArcelorMittal cannot now assert it has discovered "new evidence" justifying departure from the law of the case.

For each of these reasons, this Court's construction of the '805 patent in *ArcelorMittal I* is controlling under the law of the case doctrine and stare decisis, and the district court correctly recognized it was binding in holding that ArcelorMittal had violated Section 251.

## III. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION TO HOLD THE RE153 PATENT INVALID IN ITS ENTIRETY DUE TO ARCELORMITTAL'S PURPOSEFUL BROADENING INTENDED TO CIRCUMVENT THE COURT'S RULINGS

The district court properly held the RE153 patent invalid based on ArcelorMittal's deliberate and flagrant violation of Section 251. Section 282 expressly provides a defense of "invalidity of ***the patent*** or any claim in suit" for failure to comply with Section 251, 35 U.S.C. § 282 (emphasis added), and Section 251 in turn provides, in pertinent part that, "no reissued patent shall be granted enlarging the scope of the claims." *See also Quantum*, 65 F.3d at 1583 ("35 U.S.C. § 282 … allows a defendant in a patent infringement action to assert an invalidity defense based on a

failure to comply with any of the statutory requirements in 35 U.S.C. § 251"). Consistent with the clear statutory language, precedent recognized courts' power to invalidate patents improperly broadened in reissue more than two years after issuance of the original patent.

The district court thus had the power to hold the RE153 patent invalid because of ArcelorMittal's deliberate violation of Section 251, and properly exercised it to address ArcelorMittal's egregious broadening intended to subvert the rulings of the district court and this Court. Indeed, the only claims of the RE153 patent that were not themselves broadened were two dependent claims newly added in an unlawful reissue application (claims 24-25). The court properly held these claims introduced in a defective reissue application to be invalid, and recognized that a contrary result would inequitably allow ArcelorMittal to retain its original claim scope despite its unlawful conduct and encourage patentees to engage in such gamesmanship.

## A. A Reissue Patent Broadened In Violation Of Section 251 May Be Invalidated In Its Entirety.

The district court properly held the RE153 patent invalid in accordance with Sections 251 and 282, because the RE153 patent was purposefully broadened (through reissue claims 1-23) in violation of the express prohibition of Section 251. ArcelorMittal argues, erroneously, that the district court lacked the power to invalidate the RE153 patent in its entirety. It offers no argument, however, that if the district court has such power (as it does under the statutory language and precedent), the

court improperly exercised its discretion to hold the RE153 patent invalid in its entirety. Indeed, that issue would be reviewed for abuse of discretion, and the district court clearly acted within its sounds discretion to address ArcelorMittal's deliberate violation of Section 251.

Proper analysis begins with the language of the statute, *see Metro. Stevedore Co. v. Rambo*, 515 U.S. 291, 294 (1995), and Section 251 expressly speaks in terms of the "reissue patent," not merely the broadened claims of a patent. It provides that "[n]o reissued ***patent*** shall be granted enlarging the scope of the claims." (emphasis added). As ArcelorMittal admits, the language of Section 251 makes clear that the reissue patent as a whole should not have issued if any claim of the reissue is broader than the original patent. Blue Br. at 31.

Consistent with this statutory language, Section 282 provides that defenses available in a patent infringement suit include "invalidity of ***the patent*** or any claim in suit for failure to comply with any requirement of sections 112 or 251" (emphasis added). Thus, Section 282 expressly provides that a court may hold "the patent" as a whole invalid for failure to comply with a requirement of section 251, just as in other circumstances (e.g., under §112) a court may hold a "claim" invalid. This statutory language plainly establishes a court's power to invalidate a reissue patent.

ArcelorMittal attempts to read out of Section 282 its explicit provision that invalidity of "the patent" and not merely "any claim" is a defense based on Section 251—a defense that matches the statutory language of Section 251—in disregard of the "obligation to give meaning to all of the words in the statute." *Aristocrat Technologies Australia PTY Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 662 (Fed. Cir. 2008). Under the plain statutory language, which employs the disjunctive, a *patent* may be invalid for failure to comply with Section 251, which makes sense given precedent and Section 251's statutory purpose. Taken together, Sections 282 and 251 make clear that broadening through reissue more than two years after issuance of the original patent may render the "reissue patent" as a whole invalid, not merely particular claims.

ArcelorMittal mainly argues that reading Section 251 as written would conflict with Section 253, but this is wrong. Indeed, ArcelorMittal fails to acknowledge this Court already rejected that argument in *Hewlett-Packard*, where the Court found Section 253 does ***not*** bear on whether a defective reissue application renders invalid the entire reissue patent. *See* 882 F.2d at 1567. As this Court explained, Section 253 "provides little guidance, however, because the invalidity resulting from a defective reissue application *may be viewed as affecting the entire patent and not merely any particular claim.*" *Id.* (emphasis added). The Court distinguished invalidity resulting from a defective reissue application from "invalidation of a new claim (added during reissue)

on prior art." *Id.* at 1566.  Thus, Section 253 in no way suggests that a court lacks the power to invalidate a patent as set forth in Sections 282 and 251.[6]

Indeed, had Congress intended to make only the broadened claims of a reissue patent invalid, it could have said so—as it did in the re-examination statute, which provides that "[n]o proposed *amended or new claim* enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." 35 U.S.C. § 305 (emphasis added).  That section 251 instead prohibits a broadened "reissued *patent*," not merely new or amended reissue claims, is telling, and the difference in statutory language must be given effect.

Moreover, ArcelorMittal's suggestion (*see* Blue Br. at 25) that invalidity must always be assessed independently for each claim of a patent is clearly incorrect.  On the contrary, other provisions of the Patent Act that similarly preclude issuance of a patent as a whole have been held to convey the power to invalidate the patent in its entirety.  Section 102(f), for example, provides "a person shall be entitled to a patent unless … he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f).  Although "inventorship is determined on a claim-by-claim basis," this Court has held "*[a] patent* is invalid if more or fewer than the true inventors are

---

[6] Likewise, Section 288, which provides "[w]henever, without deceptive intention, a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid," fails to save reissue claims 24-25 of the reissued patent because no valid claims remain.

named." *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004) (emphasis added). *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998) ("[I]f nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid"). Section 185 provides an applicant "shall not receive a United States patent for an invention" involving certain government secrets if she does not first obtain a license for filing. Failure to obtain the necessary license may invalidate the entire patent. *See Beckman Instruments, Inc. v. Coleman Instruments, Inc.*, 338 F.2d 573, 577 (7th Cir. 1964) (holding "the patent was issued in contravention of the statute and is, therefore, invalid"). Thus, ArcelorMittal is wrong to suggest a violation of a provision of the Patent Act cannot render the entire patent invalid.

Indeed, far from supporting ArcelorMittal's argument, the *Hewlett-Packard* decision recognizes courts' power to invalidate a reissue patent in its entirety in appropriate circumstances. The Court observed that "[l]ogically, it would follow that [the patentee] has no claims to enforce" if its reissue application were improper, and that "some precedent exists to support invalidation of all claims when the reissue declaration is found wanting." *Hewlett-Packard*, 882 F.2d at 1566. The Court ultimately determined that in the case of a defective reissue affidavit, "such a result is neither *compelled* by the patent statute nor by the circumstances here." *Id.* (emphasis added). In emphasizing invalidation of the entire patent was not "compelled" and that it had "no reason to reach a contrary result *under the circumstances here*," the Court

clearly implied a reissue patent may be found invalid in its entirety in appropriate circumstances. *Id.* at 1567. This case, involving a flagrant violation of the express terms of Section 251 to circumvent judicial rulings and disadvantage competitors, presents just such circumstances, as the district court explained.

ArcelorMittal's reliance on *MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306 (Fed. Cir. 2010), is also misplaced. In *MBO*, this Court did not address Section 251's statutory prohibition on broadening; there, the reissue application had been filed within two years, and so only the rule against recapture of surrendered subject matter applied. *See id.* at 1319 (holding simply that "[w]hen a reissue patent contains the unmodified original patent claims and the reissue claims, a court can only invalidate the reissue claims *under the rule against recapture*") (emphasis added). But the rule against recapture is distinct from Section 251's statutory prohibition on broadening, applying to reissues filed *within* the two-year period during which broadening would otherwise be allowed. Moreover, unlike in *MBO*, the only non-broadened claims here are newly added reissue claims (claims 24-25) and it is the invalidity of those newly added claims that ArcelorMittal disputes.

Finally, ArcelorMittal's attempt to draw support from the language of Sections 102 and 103 fails; if anything, the differences in statutory language between Section 251 and Sections 102, 103, and 112 support the district court's reading of Section 251. As discussed above, Section 251 is drafted in terms of the "reissued patent" as a

whole; it makes no reference to claims or inventions thereof.  In contrast, Sections

102 and 103 address whether "the invention" was known in the prior art.  *See* 35

U.S.C. § 102(a) ("[A] person shall be entitled to a patent unless … **the invention** was

known or used by others.") (emphasis added); 35 U.S.C. § 103(a) ("A patent may not

be obtained though **the invention** is not identically disclosed or described as set forth

in section 102….") (emphasis added).  Section 112 likewise is addressed to "the

invention." *See* 35 U.S.C. § 112 ¶1 ("The specification shall contain a written

description of **the invention**.") (emphasis added).  The explicit reference to "the

invention" is significant given the long settled understanding that each claim of a

patent is "treated as a complete and independent *invention*," *Interconnect Planning Corp. v.

Feil*, 774 F.2d 1132, 1137 (Fed. Cir. 1985) (internal citations omitted) (emphasis

added), indicating these provisions require analysis on a claim-by-claim basis.  Section

251, in contrast, employs distinctly different language that speaks exclusively in terms

of the "reissue patent" as a whole, stating that no such "patent" shall be issued that

"enlarges the scope of the claims of the original patent."

## B.   Precedent Further Shows That A Patent Improperly Broadened Following Unreasonable Delay May Be Invalidated.

Precedent further confirms courts' power to invalidate a reissue patent in its

entirety where a patentee obtains a broadening reissue more than two years after the

original patent issued.  In *Miller v. Brass Co.* , the Supreme Court held "[t]he granting

of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the

power to grant reissues, and ***may justly be declared illegal and void***." *Miller*, 104

U.S. at 355 (emphasis added).[7]  This Court has relied upon *Miller* in explaining that

"[t]he law with respect to broadening reissues was originally developed by the

Supreme Court under the Patent Act of 1870," *In re Staats*, 671 F.3d 1350, 1353 (Fed.

Cir. 2012), and this Court has further recognized that when Section 251 was amended

"in 1952 as part of an overall revision of the patent laws," "[t]he legislative history

demonstrates that the amendment to section 251 was designed to codify prior

Supreme Court authority, and in particular, the two-year limit," *id.* at 1354.  Notably,

*Miller* was well-understood to empower a court to invalidate a reissue patent in its

entirety where that reissue patent had been broadened outside of the two-year limit—

consistent with the statutory language of Section 251.  *See, e.g.*, *Sontag Chain Stores Co.

Ltd. v. National Nut Co.*, 310 U.S. 281, 293 (1940) (explaining *Miller* established "a

reissue with enlarged claims, not applied for within the two years after the original, ***is

void*** in the absence of extraordinary exculpating circumstances.") (emphasis added).

For example, in *General Radio Co. v. Allen B. Du Mont Laboratories, Inc.*, 129 F.2d

608 (3d Cir. 1942), the Third Circuit explained "[i]t has long been settled that due

---

[7] In *Hewlett-Packard*, this Court in dictum erroneously described *Miller* as invalidating the new claim only.  882 F.2d at 1567.  This read *Miller* too narrowly; indeed, the Supreme Court stated "it is competent for the courts to decide whether the delay was unreasonable, and whether the reissue was therefor contrary to law and void."  104 U.S. at 356.  In any event, in this case, reissue claims 24-25 were only added in the reissue, and did not appear in the original patent.  Hence, the power to void the reissue would necessarily encompass those claims.

diligence must be exercised in discovering a mistake in a patent and that an unreasonable delay in making application for reissue *invalidates the reissue patent*," *id.* at 612 (emphasis added).  In denying a petition for rehearing, the court explained that by not meeting the requirements for reissue, "the reissue patent was **wholly void** as beyond the power of the Commissioner to grant."  *Id.* at 614 (emphasis added); *see H.W. Roos Co. v. McMillan*, 64 F.2d 568, 569-71 (6th Cir. 1933) (holding invalid a reissued patent because it was broadened over the original patent and the delay before filing the reissue application was unreasonable).

As these examples demonstrate, it has long been recognized that courts have power to hold a reissue patent invalid for improper broadening following an unreasonable delay (which Section 251 codified to be a delay in excess of two years). The district court was within its power to hold the RE153 patent invalid, including reissue claims 24-25 introduced in ArcelorMittal's defective broadening reissue application.

## C.  This Reading Is Supported By Considerations Of Equity And Policy

ArcelorMittal's interpretation of the statutory authority is also "plainly at variance with the policy of the legislation as a whole."  *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 703-04 (1991).  Allowing reissue claims 24-25—which were added in ArcelorMittal's reissue application—to stand would permit ArcelorMittal to recover its original claim scope despite the fact that ArcelorMittal "pursued its reissue patent

as an intentional strategy to avoid the consequences of [the district court's] narrow claim construction, with the ultimate goal of capturing more acts of infringement," (A19), and would encourage other attempts at broadening.

That outcome would undermine the policy of repose underlying the reissue statute and foster gamesmanship from patentees seeking to circumvent adverse claim constructions in litigation. Section 251 provides for repose by prohibiting patentees from filing for broadening reissues more than two years after grant of the original patent. *See Youman*, 679 F.3d at 1342. This two-year period for broadening is a limited exception to the general principle that public notice of the scope of patent rights is necessary "to apprise the public of what is still open to them." *Markman*, 517 U.S. at 373; *see Miller*, 104 U.S. at 352 (explaining "omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed"). If the only consequence patentees face in obtaining an improperly broadened reissue outside the two-year window were narrowing the patent to its original claim scope, patentees would benefit from the *in terrorem* effect and uncertainty of the broadened patent, as ArcelorMittal has here, with no meaningful risk or deterrent even if challenged in court. Such an outcome threatens the considerations of repose and public notice central to the statutory limit on broadening.

Thus, in the analogous re-examination context, this Court recognized that "[i]f the only penalty … is a remand to the PTO to have the reexamined claims narrowed … then applicants will have an incentive to attempt to broaden their claims" and "to enforce those broadened claims against their competitors." *Quantum*, 65 F.3d at 1584. While *Quantum* was addressing a single claim because it arose in the re-examination context, the policy considerations enunciated in *Quantum* apply equally to the patent as a whole in reissue, as the district court held. (A5-6); *see Quantum*, 65 F.3d at 1584. If claims 24-25 were not invalidated because they do not broaden the scope of the original patent, ArcelorMittal would have retained the scope of its original claims despite its deliberate strategy to broaden its original patent in violation of the express statutory prohibition on broadening, and despite the burdens ArcelorMittal's wrongful conduct has imposed on Defendants and the courts.

The equities here lean even more strongly in favor of invalidity. ArcelorMittal engaged in deliberate broadening in clear violation of Section 251's express command, did so to deter competition from products found not to infringe its patent, and did so in a blatant attempt to circumvent the claim construction of the '805 patent affirmed by this Court after a jury's verdict. ArcelorMittal used its unlawfully broadened reissue patent not only in court in an effort to frustrate this Court's mandate, but also in the marketplace to do precisely what the statute is meant to prohibit—to intimidate customers from purchasing product that this Court confirmed does not infringe the

'805 patent. The district court correctly recognized that the penalty for such unfair broadening under the Patent Act and precedent is that the reissue patent may be invalidated. Indeed, allowing patentees to engage in such conduct without this available penalty would only encourage such behavior, and repeated assaults on the finality of judgments by patent holders whose claims are rejected by a jury (like ArcelorMittal).

Thus, the district court had the power to invalidate the RE153 patent in its entirety based on the purposeful and unlawful broadening in violation of Section 251, and was well within its discretion to do so in the circumstances here.

## IV. THE DISTRICT COURT CORRECTLY CONCLUDED THAT AK STEEL'S ACCUSED PRODUCT IS NON-INFRINGING

Even if this Court were to conclude reissue claims 24-25 of the RE153 patent are not invalid based on ArcelorMittal's deliberate violation of Section 251, the Court should affirm the judgment in the 050 action because the district court correctly held on summary judgment that AK Steel's accused product has an ultimate tensile strength below 1500 MPa and thus cannot literally infringe. (A16-17.)

In the first appeal, this Court instructed the district court to consider only literal infringement on remand, having affirmed the judgment of no infringement under the doctrine of equivalents. *ArcelorMittal I*, 700 F.3d at 1322. This Court noted the infringement issue might be resolved on summary judgment. *Id.* at 1322. On

remand, Defendants filed motions for summary judgment of non-infringement (A400-13; A414-76), which the district court granted.  (A9-20.)  The court's finding that "the accused products did not meet the ['very high mechanical resistance'] limitation" (A17), is supported by the record.

As ArcelorMittal conceded at trial, the accused AK Steel product has an ultimate tensile strength below 1500 MPa.  ArcelorMittal argued in its opening statement that "[t]he evidence will show that … AK Steel's products are a little bit less than 1500 megapascals." (A1073 at 126:4-8.)  ArcelorMittal likewise admitted in closing that "AK Steel's [product] is a little bit less, 1442 [MPa]."  (A1347 at 1124:25-1125:6.)  ArcelorMittal's own expert, Dr. Wagoner, conceded his testing of AK Steel's accused product confirmed it had a strength below 1500 MPa, and admitted AK Steel did not literally meet the "very high mechanical resistance" limitation.  (A1172 at 430:8-13, 431:4-13; A1181 at 465:3-16.)

In summary judgment briefing below, ArcelorMittal's combined opposition to Defendants' motions for summary judgment of noninfringement failed to raise any evidence that AK Steel's product had an ultimate tensile strength of 1500 MPa or greater.  (A490-92.)  During argument on the motion before the district court, ArcelorMittal's counsel further conceded he was unaware of any evidence in the trial record that AK Steel's product exceeded 1500 MPa.  (A741-42 at 32:15-20, 36:6-14.)  Instead, ArcelorMittal tried to raise supposed "new acts of infringement" through a

declaration citing alleged events occurring long after the conclusion of the trial and a declaration purporting to establish the need for additional discovery regarding the new acts of infringement (A490-91; A511-12; A513-16).

In implementing the mandate's limited remand, the district court properly declined to consider purported "new acts of infringement" alleged by ArcelorMittal. The court noted "this issue of fact was not presented to the jury at the original trial and is not part of the record at bar." (A17 n.9.) Reopening the record would create further delay and give ArcelorMittal another bite at the apple to try to meet a burden it failed to carry at trial. A remand is not an opportunity for "a litigant who . . . has neglected to produce evidence to support a desired finding" to get "two bites of the apple." *E.E.O.C. v. Westinghouse Elec. Corp.*, 925 F.2d 619, 631 (3d Cir. 1991). Thus, it was well within the proper discretion of the district court to decline to reopen the record. *See Enzo Biochem*, 188 F.3d at 1370.

In the face of this clear record, and its own admission below that the trial record established AK Steel's accused product has an ultimate tensile strength below 1500 MPa, ArcelorMittal resorts to the misleadingly argument that "counsel for AK Steel conceded at oral argument 'that at least some accused products have a mechanical resistance of 1500 MPa or greater.'" Blue Br. 54 (quoting *ArcelorMittal I*, 700 F.3d at 1322). The transcript of the oral argument reflects, however, that AK Steel's counsel never conceded or suggested that any *AK Steel* product has a

mechanical resistance of 1500 MPa or greater. Rather, counsel for AK Steel was

presenting oral argument on behalf of all three Defendants in the 050 action,

including Severstal and Wheeling-Nisshin, who have different products than AK

Steel. Counsel for AK Steel explained that *AK Steel's product* was below 1500 MPa, but

that some evidence as to other Defendants' products may have been above 1500 MPa.

(*See* Oral Argument Recording at minute 32-33.)[8] Not only did AK Steel's counsel

correctly state that AK Steel's product has an ultimate tensile strength below 1500

MPa, he also referenced evidence that existed as to the other Defendants' products,

but he did not concede any evidence existed to create a genuine issue of material fact.

Thus, there is no factual dispute that AK Steel's accused product had an

ultimate tensile strength below 1500 MPa. ArcelorMittal did not even challenge this

determination in its opening brief, waiving any such challenge. The judgment of

noninfringement of the RE153 patent should therefore be affirmed.

## V. FURTHER PROCEEDINGS REGARDING COMMERCIAL SUCCESS ARE NOT NECESSARY BECAUSE THE RECORD IS DEVOID OF RELEVANT EVIDENCE

The judgments below should also be affirmed because ArcelorMittal cannot

overcome the prima facie case of obviousness affirmed by this Court in the first

appeal. *ArcelorMittal I*, 700 F.3d at 1324 ("'[T]he jury properly concluded that

---

[8] A transcript of this argument is provided for the Court's convenience
and is found in the appendix at A1606-64, the relevant portion being at
A1644-45.

[Defendants-Appellees] had established a prima facie case of obviousness"). One of the two issues this Court remanded to the district court was determination of "whether ArcelorMittal has pertinent commercial success evidence sufficient to overcome the prima facie case of obviousness." *Id.* at 1326. While "ArcelorMittal's commercial success evidence was before the jury," the district court's construction prevented the jury "from considering the commercial success of ArcelorMittal's cold-rolled steel sheet." *Id.* at 1325.

ArcelorMittal cannot, however, demonstrate the required nexus between its commercialized sheet product and reissue claims 24 and 25.[9] The evidence at trial concerning the ultimate tensile strength of ArcelorMittal's product showed it was below 1500 MPa and therefore outside of the scope of reissue claims 24-25 (and the claims of the original patent). ArcelorMittal's own expert, Dr. Wagoner, testified both on direct and cross that ArcelorMittal's commercial product, USIBOR 1500-P, has a mechanical resistance below 1500 MPa. (A1172 at 430:7-19; A1181 at 465:3-12.) When asked whether "the USIBOR product was a little less than 1500 MPa," Dr. Wagoner answered, "yes." (A1172 at 430:14-16.) For the reasons discussed in section

---

[9] Reissue claim 25 adds only the limitation "composed predominantly of martensite," which is expressly found in the Bano reference that established prima facie obviousness, *ArcelorMittal I*, 700 F.3d at 1324. Bano teaches "the microstructure is totally martensitic." (A1602.) ArcelorMittal itself argues substitution of reissue claims 24-25 for the original patent means those claims were "substantially identical," Blue Br. 18 n.7, which would also make this Court's affirmance of prima facie obviousness applicable to those claims.

IV,[10] *supra*, Defendants' accused products, which are noninfringing, likewise lack nexus to the claims requiring an ultimate tensile strength above 1500 MPa. Therefore, the commercial success evidence presented to the jury, even if the jury had been permitted to consider ArcelorMittal's cold-rolled steel sheet, would not have had the requisite nexus to the claims. "Absent a demonstrated nexus, ArcelorMittal's commercial success evidence is not significant," *ArcelorMittal I*, 700 F.3d at 1326, and the claims are invalid as obvious under the Court's mandate.

## CONCLUSION

For the foregoing reasons, and those stated in the district court's opinions, this Court should affirm the district court's judgments.

Dated: June 16, 2014

Respectfully submitted,

/s/ Christopher N. Sipes
Christopher N. Sipes
Roderick R. McKelvie
Jeffrey H. Lerner
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 662-6000

*Attorneys for Defendant-Appellee
AK Steel Corporation*

---

[10] Appellees Severstal and Wheeling-Nisshin address the noninfringement of their accused products in their separate brief.

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2014, the foregoing brief was filed with the Court using the Court's electronic case filing system, which will send notification to all registered users.

/s/ Christopher N. Sipes

*Counsel for Appellee AK Steel Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

The brief contains 13,849 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Garamond font.

/s/ Christopher N. Sipes
*Counsel for Appellee AK Steel Corporation*